**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4035-23

1650 CORPORATE ROAD
WEST, LLC,

      Plaintiff-Appellant,

v.

THE TOWNSHIP COMMITTEE
OF THE TOWNSHIP OF
LAKEWOOD and THE
TOWNSHIP OF LAKEWOOD
PLANNING BOARD,

      Defendants-Respondents.

_____

Argued February 25, 2026 – Decided March 30, 2026

Before Judges Mayer, Paganelli, and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-0203-23.

Robert C. Shea argued the cause for appellant (R.C. Shea & Associates, attorneys; Robert C. Shea, of counsel and on the briefs; Vincent J. DelRiccio, on the briefs).

Robin La Bue argued the cause for respondent Township Committee of Township of Lakewood (Rothstein Mandell Strohm Halm & Cipriani, attorneys; Robin La Bue, on the brief).

Jilian McLeer argued the cause for respondent Township of Lakewood Planning Board (John J. Jackson III & Associates, Attorneys at Law, LLC, attorneys; John J. Jackson, III, of counsel and on the brief; Jilian McLeer, on the brief).

PER CURIAM

Plaintiff 1650 Corporate Road West, LLC appeals from an October 17, 2023 order granting partial summary judgment to defendant Township of Lakewood Planning Board (Board). It also appeals from a November 17, 2023 order denying reconsideration of the October 17 order and denying its request to extend discovery. Plaintiff also appeals from a January 19, 2024 order granting partial summary judgment to defendant Township Committee of the Township of Lakewood (Township Committee). Additionally, plaintiff appeals from a July 9, 2024 final judgment, after a bench trial, dismissing all remaining counts of its amended complaint. We affirm all orders on appeal.

This case arises from plaintiff's procedural and substantive challenges to the Township Committee's adoption of Ordinance 2022-046 (Ordinance). The Ordinance permits catering facilities and banquet halls as accessory uses to

2

schools in non-residential zones, provided the facility or hall meets specific parking requirements.

Plaintiff owns property in Lakewood Township's (Township) M-1 industrial zone. The M-1 industrial zone expressly allows for schools as permitted uses. Upon learning of the Township Committee's proposal to adopt the Ordinance, plaintiff attended various Township Committee and Board meetings addressing the Ordinance. At the meetings, plaintiff, its counsel, and its expert planner raised procedural and substantive challenges to the Ordinance. As relevant to our decision, we recite the actions of the Township Committee and Board regarding adoption of the Ordinance.

The Board's November 23, 2021 meeting minutes noted the approval of the Board's calendar for 2022. Notice of the Board's 2022 meeting dates was published in the Asbury Park Press on December 4, 2021 and in The Star-Ledger on December 7, 2021. According to the published notices, the Board scheduled meetings for November 15 and November 29, 2022. The Board's 2022 annual reorganization meeting occurred on January 4, 2022.

The Township Committee held its 2022 annual reorganization meeting on January 3, 2022. The notice of the Township Committee's meetings for 2022 was published in The Star-Ledger on January 5, 2022. The notice stated the

Township Committee would hold meetings on October 20, 2022 and December 8, 2022. In a certification, the Township Committee's clerk confirmed she caused the annual notice of the Township Committee's 2022 meetings "to be posted in the municipal building as well as mailed to both The Star-Ledger and the Asbury Park Press." The Township clerk also attested the annual notice with the Township Committee's 2022 meeting dates was published in the Star Ledger on January 5, 2022.

The Township Committee's agenda for its October 20, 2022 meeting indicated the Ordinance would be considered for a first reading. The agenda further stated "[a]dequate notice of this meeting has been provided in accordance with the provisions of the Open Public Meetings Act (OPMA), N.J.S.A. 10:4-6, and published in The Star-Ledger on January 5, 2022."

At a virtual meeting on October 20, 2022, the Township Committee introduced the Ordinance. Members of the public were invited to participate in the virtual meeting through a secure web conferencing service or telephone and were allowed to email public comments to the Township Committee. Additionally, the Township Committee livestreamed and recorded the meeting. The Ordinance, as first introduced, provided:

> 18-906 I. Public and Private Schools.

> In all zones where schools are permitted uses, catering facilities and banquet halls shall be allowed as accessory uses in the school buildings, provided the following parking requirements are met:
>
> Where the section of the school utilized for catering and banquet functions is 800 square feet to 1,999 square feet, 0.75 parking spaces shall be required for every 100 square feet of area utilized for catering and banquet uses, and if the section of the school utilized for catering and banquet functions is 2,000 square feet o[r] greater, then 1.0 parking spaces shall be required for every 100 square feet.

The minutes from the Township Committee's October 20, 2022 meeting reflected some members of the public offered comments at the virtual proceeding while others emailed comments. Generally, the comments questioned the sufficiency of the parking requirements set forth in the Ordinance. Plaintiff's attorney attended the meeting and stated he had submitted a letter on plaintiff's behalf opposing the Ordinance.

The October 20, 2022 letter from plaintiff's attorney identified several objections to the Ordinance. The letter stated the Ordinance "would create havoc" for plaintiff's property and other properties located in the M-1 industrial zone because "[t]he area [wa]s already plagued by heavy traffic congestion and rampant unapproved street parking from the banquet halls already in existence." According to the letter, "[t]he addition of catering facilities and banquet halls as

5

a permitted accessory use w[ould] exacerbate the existing difficulties exponentially."

Following receipt of comments from the public, including plaintiff, the Township Committee referred the Ordinance to the Board for its review and recommendations. The Township Committee stated it would hold another public hearing on the Ordinance after the Board's review.

In an October 26, 2022 notice published in The Star-Ledger, the Township Committee confirmed the Ordinance had been introduced and would be further considered for final passage at the Township Committee's December 8, 2022 meeting. Members of the public were invited to attend the December 8, 2022 meeting in person, through a secure web conferencing service, or by telephone. The notice stated the identification number for the secure web conferencing service would be posted on the Township's website and the meeting would be livestreamed. The notice further stated members of the public could email comments prior to or during the meeting.

On November 15, 2022, plaintiff's attorney sent another letter to the Township advising the secure web conferencing service for the October 20, 2022 meeting did not allow him to participate. Plaintiff's counsel "request[ed] that [the Township Committee] ensure that any defect with the [web conferencing

6

service] is corrected" for the Township Committee's December 8, 2022 meeting. Plaintiff's attorney also asked the Township Committee to provide him with the link to the secure web conferencing service page, the correct meeting identification number, and the correct passcode for the December 8 meeting.

The Board held a consistency review on the Ordinance at its November 15, 2022 meeting. The agenda for this meeting indicated "[t]he time, date and location of th[e] meeting was published in the Asbury Park Press and The Star-Ledger and posted on the bulletin board in the office of the Township . . . at least [forty-eight] hours in advance." The agenda also noted an "ordinance for review" would be considered by the Board on November 15.

At the start of the meeting, the Board's attorney advised the Board it was tasked with determining if the Ordinance was "consistent or inconsistent with the objectives of the [Township's m]aster [p]lan." The Board's attorney stated that if the Board failed to respond to the Township Committee's review request, then the Township Committee could "go forward without any input from the . . . Board." He also indicated the Board's decision was "not binding upon the governing body."

Addressing the specifics of the Ordinance, the Board's attorney explained "[i]t's very common in Lakewood for there to be a school and to use a portion

of the school . . . as a . . . catering hall." The Board's attorney further noted the "Board ha[d] frequently in the past made a determination that a banquet hall [wa]s . . . an accessory use to a school." He also stated, "a catering hall [wa]s . . . a very important adjunct or accessory to a school because it [c]ould host weddings and different types of events that [we]re associated with religious and private schools."

At the Board's November 15, 2022 meeting, plaintiff's attorney stated plaintiff had "significant issues" with the Ordinance. Plaintiff's counsel explained plaintiff "fear[ed]" allowing banquet halls as a permitted accessory use to schools "may take away a significant amount of buildings in the area."

Plaintiff retained a professional planner who testified at the Board's November 15, 2022 meeting. Plaintiff's planner explained adopting the Ordinance as introduced would allow banquet facilities "essentially[] every[] place but [three] percent of the land in Lakewood." He further testified permitting banquet halls in residential areas could be problematic due to setback requirements and because "[n]ot many schools . . . go on until all hours of the night and have festivities and catering" while "[m]ost banquet facilities do." In reviewing the Ordinance, plaintiff's planner explained the Board should consider "things like adequate lot area, how big [wa]s it, what [we]re [its] setbacks, what

[we]re [its] buffers" and "not just parking." The planner opined the Ordinance was not consistent with the Township's master plan.

After considering the comments at the November 15 meeting, the Board's chairman formed an ad hoc committee to review the Ordinance. The ad hoc committee planned to meet with the Board's professional planner and offer a recommendation to the Board regarding the consistency of the Ordinance with the Township's master plan.

On November 22, 2022, plaintiff's counsel sent a letter to the Board's attorney and the Board's administrator with a report from plaintiff's planner explaining why the Ordinance was inconsistent with the Township's master plan. According to the report, "the specific language of the land use element [of the master plan wa]s clear" that "[a]n overriding goal and objective [wa]s to minimize conflicts while protecting residential neighborhoods" but "there [wa]s no goal or objective which could reasonably be used to justify allowing banquet facilities in residential zones." The report also noted the Township's master plan indicated "[t]here ha[d] been an ongoing issue of encroachment of incompatible uses in the Lakewood [i]dustrial [p]ark" and the "[d]evelopment of certain non-industrial uses that generate a high volume of traffic should be discouraged." Plaintiff's planner opined that "[b]anquet facilities [we]re just those types of uses

which generate high volumes of traffic that the [m]aster [p]lan specifically indicated [we]re incompatible." His report concluded "the proposed Ordinance [wa]s not consistent with any element of the . . . Township [m]aster [p]lan."

On November 23, 2022, the Board's administrator sent a memorandum regarding the Ordinance to the Board's engineer, the Board's planner, the Board's attorney, and the Board's chairman. The memorandum stated: "Historically, the Board has considered banquet facilities to be . . . accessory uses to schools, synagogues, and hotels, and has approved various applications as such." The memorandum provided excerpts from the Township's 2017 master plan "for the Board's consideration in determining consistency with the proposed Ordinance." The memorandum also included the master plan's land use element addressing traffic and parking, stating "[t]raffic congestion and a shortage of parking have been ongoing problems in Lakewood" and these issues could be addressed "in part, with sound land use planning that promotes reduced reliance on private vehicles through: compact development footprints, facilitated access to public transit; provision of local services within walking distance of residential areas; and, provision of adequate parking for existing and future land uses."

The Board continued its consistency review at the November 29, 2022 meeting. The meeting agenda issued in advance of November 29 stated the Board would consider an "ordinance for review."

At the November 29 meeting, the Board's administrator explained she met with the Board's planner and the ad hoc committee to "discuss what the [O]rdinance [wa]s proposing and what the Board's concerns might include." The Board's chairman stated the ad hoc committee discussed whether the Ordinance "should . . . only be in nonresidential zones" and "how much parking . . . [wa]s necessary." The Board's chairman also explained "the industrial park[,] . . . was built for [the] greater goals of the Township" and he noted that schools are now located in the industrial park.

After hearing public comments, the Board concluded the Ordinance "[wa]s consistent with the [m]aster [p]lan" but "urge[d]" the Township to revise the parking requirements to include "one space to 45 square feet" and to provide "[a]ll assembly areas . . . be included in the ratio" and "[n]o on street parking within 100 feet." The Board also suggested "the [Township] should alternatively consider basing the parking count on gross square footage" of any catering facility or banquet hall in the zone.

11                                                                 A-4035-23

On December 1, 2022, the Board's attorney emailed the Township's attorney with the Board's consistency findings regarding the Ordinance. The email explained the "Board believe[d] that it [wa]s salutary that the [Township] Committee [wa]s codifying that banquet halls [we]re an accessory use to schools in Lakewood" and the "Board has, for many years, viewed banquet halls as an accessory to schools." The email further stated "[t]he Board want[ed] to emphasize that an amendment to the zoning ordinance imposing conditions and standards associated with the accessory use of banquet halls must not disturb existing schools with banquet halls and that their use must be permitted to continue to be lawful as 'grandfathered.'"

The Board attorney's email also noted the Board's "most significant issue with accessory banquet uses [wa]s parking." He explained the Board "discussed possible different alternatives to define the parking criteria from which parking ratios could be calculated," including "a ratio that would be based upon the gross square footage of the building, a net square footage of the building, seating counts, occupancy counts, [and] the net area of the banquet hall itself, etc." The email further stated "[t]he Board was concerned with banquet halls being present in strictly residential zones and recommend[ed] that the [Township C]ommittee adopt criteria and specific overlay areas that would allow and exclude banquet

12

halls in specifically identified neighborhoods."  The email expressed the Board's belief that the "[O]rdinance [wa]s consistent with the master plan because it beg[a]n to regulate a common accessory use that currently has no tailored associated standards to guide the . . . Board."

The Township's attorney asked if the email from the Board's attorney constituted the Board's consistency review report or if a more formal report would be submitted.  The Township['s a]ttorney was informed the email "constitute[d] the . . . [B]oard's report regarding the proposed Ordinance."

On December 7, 2022, plaintiff's attorney emailed the Board's administrator requesting "any resolution, report, or other documents containing the findings and recommendations of the . . . Board relative to [the] proposed Ordinance[']s . . . consistency with the [m]aster [p]lan."  The Board's administrator responded the Board's attorney "communicated directly with the Township attorney" in an email and plaintiff could obtain a copy of that email through the Open Public Records Act, N.J.S.A. 47:1A-1 to -13, request.  The administrator confirmed the Board did not adopt a resolution and explained she "d[id]n't believe the Board ha[d] adopted a resolution for an Ordinance review before, [or] at least not in the last [ten] years."

13

The same day, the Township Committee posted an agenda on the Township's website for its December 8, 2022 meeting. The agenda included an amended version of the Ordinance. The Ordinance, as amended, stated:

18-906 I. Public and Private Schools.

In all non-residential zones where schools are permitted uses (Section 18-903) and the Oak Street Core Neighborhood Overlay Zone-1 (Section 18-902M), catering facilities and banquet halls shall continue to be allowed as accessory uses in the school buildings, provided the following parking requirements are met:

For the section of the school utilized for catering and banquet functions (to be known as the [b]anquet [h]all space, but not including bathrooms, food prep rooms, and facilities not associated with the [b]anquet [h]all function, such as guest preparation rooms, etc.) 1.0 parking space shall be required for every 50 square feet thereof.

The day before the December 8 meeting, plaintiff's attorney submitted another letter objecting to the revised Ordinance. Plaintiff lodged various procedural objections, including that the Township Committee could not hold virtual meetings and a member of the Township Committee had a conflict of interest due to the member's children attending a private school that "operate[d] a popular banquet facility" and because the mother of the same member held "a significant position within the administration at [a] . . . girls' school . . . which has the oldest banquet hall in town." The letter repeated plaintiff's argument

14

that the Ordinance was inconsistent with the Township's master plan and raised additional objections, including that the Ordinance failed to define catering facility or banquet hall and lacked any bulk requirements.

The Township Committee considered the Ordinance, as amended, for final passage at its December 8, 2022 meeting. At the start of the meeting, the Township's mayor stated:

> Ordinance . . . is on for second reading after referral to the . . . Board pursuant to N.J.S.A. 40:55D-64 and N.J.S.A. 40:55D-26. The [Township] Committee has received recommendations from the Board to make revisions to the original language which we do not deem to be substantive changes upon the advice of our attorneys. Thus, we have revised the [O]rdinance to include the pertinent suggestions.
>
> Those suggestions specifically related to this [O]rdinance are to recognize banquet halls as an accessory use in only nonresidential zones, Section 18-903 of the U[niform] D[evelopment] O[rdinance], and residential zones which an overlay for schools, which is the Oak Street Core Neighborhood Overlay Zone . . . Section 18-902M. The revised [O]rdinance now contains these revisions.
>
> The other suggestion was to revise the parking requirement from the originally proposed ordinance. Various suggestions were proffered by the Board, but the most prevalent recommendation appears to be the following: Parking ratio presently provided for at facilities already being used for banquet halls in town. That is one space for every [fifty] square f[ee]t of banquet hall space, not including bathrooms, food prep

15

A-4035-23

rooms, and facilities not associated with the banquet hall function. This is now detailed in the revisions to the proposed [O]rdinance.

Unlike the parking requirements for places of worship and religious facilities and catering facilities, Section 18-905, this parking requirement includes using principal use parking space requirements. This means that the school parking spaces shall be included in counting the requirements for the banquet halls. This is because while some of the other facilities may actually have concurrent things going on, there will not be a banquet hall facility going on at the same time that school is being held, that way those spots will be available.

. . . .

Our attorneys have advised us that the requirement expressed in N.J.S.A. 40:55D-26 that the . . . Board render a report including identification of any provisions in the proposed [O]rdinance amendment which are inconsistent with the [m]aster [p]lan and recommend any revisions to the amendment has been fulfilled specifically by the Board's finding that this [O]rdinance amendment is consistent with the master plan, thus the [Township] Committee has revised the [O]rdinance accordingly incorporating the pertinent recommendations.

Upon opening the December 8 meeting for public comment, the mayor explained there would be a four-minute time limit on comments. As part of his four-minutes, plaintiff's attorney raised objections to the Ordinance consistent with the objections noted in his December 7, 2022 letter to the Township

16

Committee.  Plaintiff's planner also raised objections, arguing the amended Ordinance was inconsistent with the Township's master plan.  Plaintiff's planner further cited "substantial change[s]" between the original and amended Ordinance because "the ratio of parking is different" and the amended Ordinance "contains a retroactive provision indicating that schools shall continue to be allowed to have catering and banquet facilities."

After considering the public comments, the Township Committee adopted the amended Ordinance.  On December 14, 2022, The Star-Ledger published a notice advising the Ordinance was "passed and adopted" at the Township Committee's December 8 meeting.

On January 25, 2023, plaintiff filed a fifteen-count complaint in lieu of prerogative writs and an order to show cause (OTSC) asserting procedural and substantive challenges to the Ordinance.  After the judge denied plaintiff's OTSC, the Board filed an answer.

Plaintiff subsequently moved to amend the complaint, which the judge granted.  In its amended complaint, plaintiff alleged:  the Township Committee's virtual meetings were impermissible under the OPMA (count one); a member of the Township Committee was prohibited from voting on the Ordinance and, therefore, the Township Committee lacked the majority necessary to vote on

17

final passage of the Ordinance (counts two and three); the public notice for the Township Committee's December 8, 2022 meeting was deficient due to substantial changes to the Ordinance (count four); the Township Committee violated the County Planning Board notice provisions, N.J.S.A. 40:55D-15(b) and -16 (count five); the Township Committee failed to provide notice to plaintiff of the amended Ordinance in violation of N.J.S.A. 40:55D-62.1 (count six); the four-minute speaking time limit at the Township Committee's December 8, 2022 meeting was arbitrary, capricious, and unreasonable (count seven); the Board failed to give the public adequate notice of the November 15 and November 29, 2022 meetings under the OPMA (count eight); the Board failed to conduct a master plan consistency review of the Ordinance under N.J.S.A. 40:55D-26 (count nine); the email provided by the Board's attorney did not constitute a planning board report under N.J.S.A. 40:55D-26 and, even if it did, the Township Committee violated N.J.S.A. 40:55D-62 and -26 by failing to address the inconsistency between the Ordinance and the master plan (counts ten(a) and ten(b)); the Board's reliance on a report from the Board's administrator rendered the Board's determination arbitrary, capricious, and unreasonable (count eleven); the Township's attorney tainted the record at the Township Committee's December 8, 2022 meeting (count twelve); the Township

Committee did not review a report from the Board as required under N.J.S.A. 40:55D-26 (count thirteen); the amended Ordinance was inconsistent with the Township's master plan (count fourteen); the amended Ordinance created a conditional use ordinance in violation of N.J.S.A. 40:55D-67 (count fifteen); the Board failed to reorganize properly for the 2022 year under N.J.S.A. 10:4-18 and, therefore, lacked authority to conduct its November 15 and November 29, 2022 meetings (count sixteen); and the Township Committee also violated N.J.S.A. 10:4-8 and -18, rendering its October 20, 2022 and December 8, 2022 meetings ultra vires (count seventeen). The amended complaint added new claims only as to the Township Committee. The Township Committee answered the amended complaint.

On August 18, 2023, plaintiff moved for summary judgment on counts one, four, five, six, eight, sixteen, and seventeen of the amended complaint. A month later, the Township Committee cross-moved for summary judgment on counts one, four, five, six, and seventeen of the amended complaint. The Board opposed plaintiff's motion for summary judgment and cross-moved for summary judgment on count sixteen of the amended complaint.

In an October 17, 2023 order with an attached written decision, the judge granted partial summary judgment to the Board on counts eight and sixteen of

the amended complaint, dismissing those counts with prejudice. Additionally, the judge granted partial summary judgment to the Township Committee on counts one, four, five, and six of the amended complaint, dismissing those counts with prejudice. The judge denied plaintiff's motion for summary judgment.

Plaintiff moved for reconsideration of the October 17, 2023 order granting partial summary judgment to the Township Committee and moved to expand the record to allow further discovery. The judge denied plaintiff's motion in its entirety.

On November 16, 2023, the Township Committee moved for summary judgment on count seventeen of the amended complaint. After considering the parties' arguments and written submissions the judge granted summary judgment on January 19, 2024, and dismissed count seventeen with prejudice.

The judge conducted a bench trial on the remaining counts of the amended complaint based solely on the documentary record. In a July 9, 2024 final judgment and accompanying written statement of reasons, the judge dismissed plaintiff's amended complaint in its entirety with prejudice.

On appeal, plaintiff raises a litany of arguments. Plaintiff contends: the Board and Township Committee violated N.J.S.A. 10:4-18 in reorganizing for

the 2022 year and, therefore, its proceedings related to the consistency review and adoption of the Ordinance were ultra vires; the notice provisions related to adoption of the Ordinance failed to comply with the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -171; the adoption of the Ordinance failed to comply with the requirements of the OPMA; the judge erred in denying its motion for reconsideration of the October 17, 2023 order and motion to extend discovery; the Ordinance was inconsistent with the Township's master plan; the adoption of the Ordinance was arbitrary, capricious, and unreasonable; and a member of the Township Committee had a disqualifying conflict of interest rendering adoption of the Ordinance invalid. We reject these arguments.

We begin with plaintiff's arguments regarding the summary judgment dismissal of various counts in its amended complaint against the Township Committee and the Board.

In count sixteen, plaintiff alleged the Board violated the notice provisions of N.J.S.A. 10:4-18 during its 2022 reorganization. The judge disagreed, finding the Board "voted on [its] 2022 calendar at the November 23, 2021, public meeting" and "[t]he annual notice generated from that meeting was published in two newspapers on December 4 and December 7 of 2021."

A-4035-23

The judge found that "to the extent plaintiff[] challenge[d] the Board's failure to properly reorganize for the 2022 term pursuant to N.J.S.A. 10:4-18 because it was the product of violations of the OPMA, [its] complaint was untimely." Citing Edison Board of Education v. Zoning Board of Adjustment of Edison, 464 N.J. Super. 298, 308 (App. Div. 2020), the judge explained a "complaint alleging an OPMA violation must be filed within forty-five days 'after the action sought to be voided has been made public[.]'" (quoting N.J.S.A. 10:4-15(a)).

Despite plaintiff's assertion that it only became aware of the alleged OPMA violation on March 29, 2023, and immediately sought to amend its complaint, the judge found the claim fell "well outside the [forty-five] day time limit." The judge further found "there was sufficient public notice for . . . plaintiff[] to be aware of and then challenge the Board's alleged failure to comply with OPMA in a timely fashion" because "[p]laintiff was surely aware of the meetings in November and constructively aware of the lack of notices within seven days of the January 4, 2022, re-organization hearing and the Board's failure to re-adopt the 2022 calendar." Because "[t]he filing of count sixteen [wa]s beyond [forty-five] days of the Board's review and

22

recommendations as to the Ordinance" the judge dismissed that count with prejudice.

In count eight, plaintiff alleged the Board failed to provide adequate notice in its agendas for the November 15 and November 29, 2022 meetings because the agendas simply stated "ordinance for review." The judge determined "the notice was sufficient" because it "provided notice that official action would be taken as to the review of an ordinance." The judge explained that "even if the Board's actions did not comply strictly with the statute, it was not voidable due to the protections provided in N.J.S.A. 10:4-15(a)." The judge concluded the Ordinance "was published and available before the [Township] Committee readings when it was referred to the Board" and "[t]here [wa]s no indication anyone was unaware of the actions." Therefore, the judge dismissed count eight of plaintiff's amended complaint with prejudice.

In count four, plaintiff alleged the Township Committee's public notices for the second reading of the Ordinance were deficient due to substantial changes to the Ordinance as amended. In rejecting this argument, the judge found "the amendment was neither substantive[] nor was plaintiff aggrieved by the change" because the amended Ordinance "reduced the number of zones to which the Ordinance was applicable" and "continued the determination that the

23

catering facilities and banquet halls shall continue to be allowed as accessory uses provided the parking requirements are met."

The judge also rejected plaintiff's argument that "the impact of the amendment in effect, ma[d]e[]" banquet halls as accessory uses to schools in non-residential zones "retroactive by recognizing that they are currently seen as accessory which shall continue" because "[t]he discussion by the . . . Board in reviewing the Ordinance referred to the use being historically viewed by them as an accessory use." Because "schools [we]re permitted uses in the M-1 Zone," the judge concluded the amended Ordinance "clarifying and permitting banquet facilities as an accessory to schools does not have a 'substantive effect' on the plaintiff." Thus, the judge dismissed count four of the amended complaint with prejudice.

In count five, plaintiff alleged the Township Committee violated the County Planning Board notice provisions, N.J.S.A. 40:55-15(b). Because the judge "found that no substantive changes were made in amending the Ordinance," he concluded "no further notice was required." Thus, the judge dismissed count five with prejudice.

In count six, plaintiff alleged the Township Committee failed to provide personal notice to plaintiff of the amended ordinance, as required by N.J.S.A.

40:55D-62.1, arguing the amended Ordinance constituted a zoning classification change.  In rejecting this argument, the judge concluded the Ordinance did not "fundamentally alter[]" the M-1 industrial zone.  The judge noted the Board "recognized that it ha[d] historically found banquet facilities to be an accessory use to a school, as a simcha hall."  Because "schools [we]re permitted uses in the M-1 Zone," the judge held that "clarifying and permitting banquet facilities as an accessory to schools d[id] not have a 'substantive effect' on the zone and therefore, d[id] not change the classification nor require personal notice." Therefore, the judge dismissed count six of the amended complaint with prejudice.

In count one, plaintiff alleged the Township Committee lacked authority under the OPMA to hold virtual meetings.  Citing N.J.S.A. 10:4-8(b), the judge found the plain language of the OPMA defined meetings as "any gathering 'whether corporeal or by means of communication equipment.'"  The judge concluded, "[w]here the OPMA definition of meeting includes appearance by 'communication equipment' the Board was simply complying with the law and employing technology."  Thus, the judge dismissed count one of the amended complaint with prejudice.

A-4035-23

However, the judge denied, without prejudice, summary judgment as to count seventeen. In count seventeen, plaintiff alleged the Township Committee violated the notice provisions of N.J.S.A. 10:4-8 and -18 by only publishing its annual notice for its 2022 meetings in The Star-Ledger instead of two papers and failing to notice the October 20, 2022 or the December 8, 2022 meetings as special meetings. The judge concluded there were "issues of material fact that prevent[ed] the [c]ourt from deciding the issue." The judge explained that "[m]ore evidence [wa]s required for the [c]ourt to determine this issue."

On November 16, 2023, the Township Committee moved for summary judgment on count seventeen of plaintiff's amended complaint. In granting summary judgment on this count, the judge found "the requirement to file a prerogative writ[s] must comply with the rules of the prerogative writ[s][1] and the rules of the [OPMA which] establish[ed] a [forty-five]-day period from the event being challenged." As the judge explained, "[a]ny challenge to a deficiency in the publication of an annual notice was required to have been made and to have been filed [forty-five] days from January 10th, 2022 or by February 24th, 2022." Plaintiff's filed its amended complaint challenging the published notice in March 2023. Thus, the judge held this claim was time barred.

---

[1] Rule 4:69-6(b) governs actions in lieu of prerogative writs.

Additionally, the judge concluded plaintiff failed to demonstrate any interest of justice for a relaxation of the forty-five-day requirement under Rule 4:69-6(c) and dismissed count seventeen of the amended complaint with prejudice.

We review orders granting summary judgment de novo, applying the same standard as the motion judge. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). Under that standard, we must "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). "To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)). "An issue of fact is genuine only if . . . the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." R. 4:46-2(c). "To the extent that the grant or denial of summary judgment is based on an issue of law, [appellate courts] owe no deference to an interpretation of law that flows from

established facts." State v. Perini Corp., 221 N.J. 412, 425 (2015) (citing Town of Kearny v. Brandt, 214 N.J. 76, 92 (2013)).

Similarly, our review of a trial court's interpretation of a statute, such as the OPMA, is de novo. McGovern v. Rutgers, 211 N.J. 94, 108 (2012). "[W]e do not owe any deference to the interpretations placed on the various provisions of OPMA by . . . the trial court." Ibid. Rather, our role regarding statutory interpretation "is to determine and effectuate the Legislature's intent." Ibid. (quoting Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 553 (2009)). "If the language is clear, our task is to apply that language to the situation that confronts us." Ibid. (citing State v. Shelley, 205 N.J. 320, 323 (2011)).

Plaintiff contends the judge erred in granting summary judgment as to counts one, four, five, six, eight, sixteen, and seventeen of the amended complaint. We address the summary judgment dismissal of each of these counts.

In count sixteen, plaintiff claims the Board's 2022 reorganization violated N.J.S.A. 10:4-18. As a result, plaintiff contends the Board lacked authority to hold its November 15 and November 29, 2022 meetings.

The OPMA provides:

> At least once each year, within [seven] days following the annual organization or reorganization meeting of a public body, or if there be no such organization or reorganization meeting in the year, then by not later

28                                                    A-4035-23

than January 10 of such year, every public body shall post and maintain posted throughout the year in the place described in [N.J.S.A. 10:4-8(d)(1)], mail to the newspapers described in [N.J.S.A. 10:4-8(d)(2)], submit to the persons described in [N.J.S.A. 10:4-8(d)(3)], for the purpose of public inspection a schedule of the regular meetings of the public body to be held during the succeeding year. Such schedule shall contain the location of each meeting to the extent it is known, and the time and date of each meeting. In the event that such schedule is thereafter revised, the public body, within [seven] days following such revision, shall post, mail and submit such revision in the manner described above.

[N.J.S.A. 10:4-18.]

Under the OPMA, "[a]ny action taken by a public body at a meeting which does not conform with the provisions of this act shall be voidable in a proceeding in lieu of prerogative writ[s] . . . , which proceeding may be brought by any person within [forty-five] days after the action sought to be voided has been made public." N.J.S.A. 10:4-15(a); see also Mason v. City of Hoboken, 196 N.J. 51, 69 (2008) (noting "actions taken at a meeting in violation of the [OPMA] are to be challenged within [forty-five] days in a proceeding in lieu of prerogative writs." (citing N.J.S.A. 10:4-15(a))).

Under Rule 4:69-6(a), "[n]o action in lieu of prerogative writs shall be commenced later than [forty-five] days after the accrual of the right to review, hearing or relief claimed, except as provided by paragraph (b) of this rule." Rule

29

4:69-6(b)(3) provides "[n]o action in lieu of prerogative writs shall be commenced . . . to review a determination of a planning board . . . after [forty-five] days from the publication of a notice once in the official newspaper of the municipality or a newspaper of general circulation in the municipality." A court may enlarge the forty-five-day period "where it is manifest that the interest of justice so requires." R. 4:69-6(c). There are three recognized exceptions allowing for enlargement of the time period under Rule 4:69-6(a) based on the interest of justice. The exceptions are "cases involving (1) important and novel constitutional questions; (2) informal or [e]x parte determinations of legal questions by administrative officials; and (3) important public rather than private interests which require adjudication or clarification." Brunetti v. Borough of New Milford, 68 N.J. 576, 586 (1975) (footnotes omitted).

Plaintiff argues the Board's November 15 and November 29, 2022 meetings were void because the Board allegedly failed to properly reorganize for the 2022 year. Based on those allegations, plaintiff had forty-five days from those dates to file its action in lieu of prerogative writs. However, plaintiff first asserted this claim in its amended complaint filed on July 6, 2023. Thus, plaintiff's allegations in count sixteen of the amended complaint were filed well beyond the forty-five-day time period.

Nor is there anything in the record demonstrating this case qualifies for an enlargement of the forty-five-day requirement under Rule 4:69-6(c). Plaintiff failed to articulate any basis for enlarging the forty-five-day period. Because the allegations in count sixteen of plaintiff's amended complaint were untimely, the judge properly granted summary judgment.

In count seventeen, plaintiff alleged the Township Committee violated N.J.S.A. 10:4-8 and N.J.S.A. 10:4-18 by failing to properly notice the Township Committee's October 20 and December 8, 2022 meetings. Plaintiff claims those meetings were ultra vires and the judge erred in dismissing count seventeen.

As defined under the OPMA:

> "Adequate notice" means written advance notice of at least [forty-eight] hours, giving the time, date, location and, to the extent known, the agenda of any regular, special or rescheduled meeting, which notice shall accurately state whether formal action may or may not be taken and which shall be (1) prominently posted in at least one public place reserved for such or similar announcements, (2) mailed, telephoned, telegrammed, or hand delivered to at least two newspapers . . . designated by the public body . . . because they have the greatest likelihood of informing the public . . . one of which shall be the official newspaper . . . and (3) filed with the clerk of the municipality. . . . Where annual notice or revisions thereof in compliance with [N.J.S.A. 10:4-18] set forth the location of any meeting, no further notice shall be required for such meeting.
>
> [N.J.S.A. 10:4-8(d).]

31

As we previously noted, N.J.S.A. 10:4-18 requires public bodies to annually publish "a schedule of the regular meetings of the public body to be held during the succeeding year."

We are satisfied the judge properly dismissed count seventeen as untimely under Rule 4:69-6 and N.J.S.A. 10:4-15(a) because that count was filed more than forty-five days after the January 5, 2022 publication of the Township Committee's January 2022 reorganization. Plaintiff's July 6, 2023 amended complaint was filed well beyond the forty-five-day time period for challenging the Township Committee's January 5, 2022 action.

Further, we reject plaintiff's assertion the annual notice for the Township Committee's 2022 reorganization failed to comply with N.J.S.A. 10:4-18 because the notice was not sent to two newspapers. The Township Committee held its 2022 reorganization meeting on January 3, 2022. The Township's clerk certified she sent the required annual notice "to both The Star-Ledger and the Asbury Park Press" and "posted [the notice] in the [Township's] municipal building." Thus, we are satisfied the Township Committee complied with the OPMA notice requirements and no further notice was required for the Township Committee's October 20 and December 8, 2022 meetings.

In count four, plaintiff alleges the published notice for the Township's December 8, 2022 meeting failed to comply with N.J.S.A. 40:55D-63 and N.J.S.A. 40:49-2 to -2.1 because the amended Ordinance contained "substantial revisions" from the initial Ordinance.

As first introduced, the Ordinance provided that catering facilities and banquet halls would be permitted accessory uses in all zones where schools are permitted provided the Ordinance's parking requirements were satisfied. The amended Ordinance stated that catering facilities and banquet halls would be permitted as accessory uses in all non-residential zones where schools were permitted uses provided the Ordinance's parking requirements were met. Additionally, the amended Ordinance enhanced the parking requirement by requiring one parking space for every fifty square feet of the section of the school utilized for catering and banquet functions.

At the Township Committee's December 8, 2022 meeting, the amended Ordinance was considered for a second reading. At that meeting, the mayor explained the Township Committee received recommendations from the Board with suggested revisions to the original Ordinance. The mayor stated the Township Committee did not consider the recommended revisions "to be

33

substantive changes." Therefore, the Township Committee "include[d] the pertinent suggestions" recommended by the Board in the amended Ordinance.

N.J.S.A. 40:49-2, which addresses the passage of municipal ordinances, provides:

> a. Every ordinance after being introduced and having passed a first reading . . . shall be published in its entirety or by title or by title and summary at least once in a newspaper published and circulated in the municipality . . . together with a notice of the introduction thereof, the time and place when and where it will be further considered for final passage.
>
>         . . . .
>
> c. Upon the opening of the hearing, the ordinance shall be given a second reading, which reading may be by title, and thereafter, it may be passed with or without amendments, or rejected. . . . If any amendment be adopted, substantially altering the substance of the ordinance, the ordinance as so amended shall not be finally adopted until at least one week thereafter . . . and shall be published in its entirety or by title or by title and summary . . . and the time and place when and where the amended ordinance will be further considered for final passage, at least two days prior to the time so fixed. At the time and place so fixed . . . the governing body may proceed to pass the ordinance, as amended, or again amend it in the same manner.

N.J.S.A. 40:49-2.1(c) similarly provides:

> If any amendment be adopted to any proposed ordinance substantially altering the substance of the proposed ordinance, there shall be caused to be

34

published a notice of the title of the ordinance, the introduction and time and place that the amended ordinance will be further considered and a summary of the objectives or provisions of the amendment or amendments, which notice shall be published at least [two] days prior to the time so fixed therefor in accordance with [N.J.S.A. 40:49-2(c)].

Whether an amendment substantially alters the substance of a proposed ordinance "involves a mixed question of law and fact." Wollen v. Borough of Fort Lee, 27 N.J. 408, 420 (1958). "The words [of the amendment] are to be assessed in the context of the provision of which they are a part and the basic policy of the statute." Ibid. To demonstrate an amendment has substantially altered the substance of the original ordinance, a plaintiff must show that it "was of such legally consequential materiality in its contributive relation to the substantive body of the ordinance . . . which essentially altered the manifest objective intent and the materiality of the ordinance." Manning v. Borough of Paramus, 37 N.J. Super. 574, 581 (App. Div. 1955).

The purpose of N.J.S.A. 40:49-2 "is to [e]nsure that the public will be apprised of the proposed ordinance (or amendment) prior to its final passage in order that objections may be fully and freely raised and, if persuasive, honored." LaRue v. Twp. E. Brunswick, 68 N.J. Super. 435, 451 (App. Div. 1961). If an amendment "imposes no burden on plaintiffs" the amended ordinance will not

be considered a substantial alteration necessitating republication. Wollen, 27 N.J. at 420-21. Similarly, where an amended ordinance's "proposed effect was an additional gratuity and not an enlarged restraint," the amendment will not be deemed substantial. Manning, 37 N.J. Super. at 580-81.

Here, we are satisfied the amendment did not substantially alter the Ordinance to require compliance with N.J.S.A. 40:49-2 and -2.1. One of the changes incorporated in the amended Ordinance limited the Ordinance to non-residential zones that allow schools, rather than all zones that allow schools. The other change in the amended Ordinance required an increase in the number of parking spaces. By limiting the Ordinance to non-residential zones, the amendment is more restrictive because it applies to fewer zones. By increasing the number of required parking spaces, the amended Ordinance limited traffic congestion and off-street parking. Neither of the changes in the amended Ordinance altered the enactment's expressed intent to permit banquet halls and catering facilities as accessory uses to schools.

Here, the focus of public comments questioned the sufficiency of the proposed parking requirements. The amended Ordinance increased the parking for catering facilities and banquet halls associated with schools. The increased parking requirement was "an additional gratuity" for municipal residents, as well

as plaintiff, rather than an impermissible "enlarged restraint." Manning, 37 N.J. Super. at 580.

We agree with the judge that plaintiff was not aggrieved by the changes incorporated in the amended Ordinance. Prior to the adoption of the Ordinance, plaintiff's property, located in the M-1 industrial zone, allowed schools as permitted uses. See Lakewood, N.J., Code § 18-903(M)(1)(m). The amended language did not change the Ordinance's impact on plaintiff. In fact, the amended Ordinance benefited plaintiff by requiring more parking for banquet halls and catering facilities associated with schools and expressly limiting on-street and overflow parking which could impact businesses within the industrial zone. We are satisfied the amended Ordinance did not additionally burden plaintiff in a way that substantially altered the Ordinance.

In count five, plaintiff alleged the Township Committee violated the County Planning Board notice provision under N.J.S.A. 40:55D-15(b) and N.J.S.A. 40:55D-16. Therefore, plaintiff claimed the judge erred in dismissing that count.

The Township's clerk certified she sent the Ordinance to the Ocean County Planning Board on October 28, 2022. Additionally, an October 28, 2022 email from the clerk's office transmitted the Ordinance to the Ocean County Planning

Board on that date. The email stated the "[O]rdinance was [i]ntroduced at the Township Committee meeting [o]n October 20, 2022" and "[t]he second hearing and public comment on said [O]rdinance is scheduled for December 8, 2022." The Township's clerk further certified the Ordinance "as adopted was submitted to the Ocean County Planning Board on December 12, 2022 in accordance with N.J.S.A. 40:55D-16." The clerk also sent a December 12 email to the Ocean County Planning Board attaching the Ordinance as adopted.

N.J.S.A. 40:55D-15(b) states:

> Notice by personal service, certified mail, or e-mail with confirmation that the e-mail was delivered, shall be made to the county planning board of (1) all hearings on the adoption, revision or amendment of any development regulation at least [ten] days prior to the date of the hearing.
>
> . . . .
>
> For the purposes of this section, proof that an e-mail was sent to the correct e-mail address within the required time frame shall constitute a rebuttable presumption that the e-mail was delivered.

Plaintiff argues the Township Committee violated N.J.S.A. 40:55D-15(b) because it only sent the original Ordinance to the Ocean County Planning Board and not the amended Ordinance. The Township Committee first introduced the Ordinance at its October 20, 2022 meeting and stated the matter would be

considered for adoption at the Township Committee's December 8, 2022 meeting after hearing public comment and considering any revisions or amendments. On October 28, 2022, the Township clerk's office emailed notice to the Ocean County Planning Board, advising the Township would hold a "hearing[] on the adoption, revision, or amendment" of the Ordinance of December 8. N.J.S.A. 40:55D-15(b). The October 28 date was "at least [ten] days prior" to the December 8, 2022 meeting when the Township Committee was scheduled to consider adopting the Ordinance. Ibid.

We are satisfied the Township Committee complied with N.J.S.A. 40:55D-15(b). It also complied with N.J.S.A. 40:55D-16 by sending the amended Ordinance as adopted to the Ocean County Planning Board on December 12, 2022. Because there was unrefuted evidence in the record supporting the Township Committee's compliance with the County Planning Board notice provisions, the judge properly dismissed that count.

In count six, plaintiff argues the Township Committee violated N.J.S.A. 40:55D-62.1 by failing to provide plaintiff with personal notice of the December 8, 2022 meeting because the amended Ordinance constitutes a zoning classification change.

"N.J.S.A. 40:55D-62.1 directs that all property owners within a zoning district shall receive personal notice if the municipal body seeks to change the classification or boundaries of a zoning district." Robert James Pacilli Homes LLC v. Twp. of Woolwich, 394 N.J. Super. 319, 329 (App. Div. 2007). The statute provides:

> Notice of a hearing on an amendment to the zoning ordinance proposing a change to the classification or boundaries of a zoning district, exclusive of classification or boundary changes recommended in a periodic general reexamination of the master plan by the planning board . . . shall be given at least [ten] days prior to the hearing by the municipal clerk to the owners of all real property as shown on the current tax duplicates, located, in the case of a classification change, within the district and within the State within 200 feet in all directions of the boundaries of the district.
>
> [N.J.S.A. 40:55D-62.1.]

A "classification," while not defined in the MLUL, "refers to the use permitted in a zoning district, such as residential, commercial, or industrial, as well as sub-categories within those broader uses." Robert James, 394 N.J. Super. at 330-31. A change of classification in a zoning district occurs where a "change in any of these broad categories and sub-categories has the capacity to fundamentally alter the character of a zoning district." Id. at 331. "[T]he type of notice to be provided on the occasion of a proposed amendment to a zoning

ordinance should focus on the substantive effect of the amendment rather than the appellation given to the zone." Id. at 332. "[T]he test is not the number of changes but the substance of the changes." Id. at 333.

Plaintiff asserts permitting banquet halls and catering facilities as accessory uses to schools in the Township's M-1 industrial zone constitutes a classification change to that zone. The M-1 industrial zone is not limited to industrial uses. The M-1 industrial zone permits industrial uses and permits uses such as "[p]ublic and private schools"; "[h]otels and motels"; "[f]acilities for on-site provision of health and human services, including spas, gyms, health clubs, and like facilities"; and "[r]estaurants." Lakewood, N.J., Code § 18-903(M)(1)(m), (r), (t), (w). Banquet halls and catering facilities serve food and host events and, therefore, are similar to restaurants, hotels, and motels. Here, the Ordinance which allows banquet halls as permitted accessory uses to schools does not "fundamentally alter the character" of the M-1 industrial zone. Robert James, 394 N.J. Super. at 331.

Moreover, public and private schools were principal permitted uses in the M-1 industrial zone prior to enactment of the Ordinance. Lakewood, N.J., Code § 18-903 (M)(1)(m). The Board historically recognized banquet halls and catering facilities as accessory uses to schools and previously approved such

uses through variance applications. The Ordinance allowing banquet halls and catering facilities as accessory uses to schools in the M-1 industrial zone does not substantively change the character of the zone requiring notice under N.J.S.A. 40:55D-62.1. Therefore, the judge properly dismissed this count.

In count eight, plaintiff alleges the Board failed to provide adequate notice of its November 15 and November 29, 2022 meetings under N.J.S.A. 10:4-9. It claims the meeting agendas simply stating "ordinance for review" lacked the required specificity. Therefore, plaintiff argues the judge erred in granting summary judgment on that count.

"No public body shall hold a meeting unless adequate notice thereof has been provided to the public." N.J.S.A. 10:4-9(a). Adequate notice under N.J.S.A. 10:4-8(d) means "written advance notice of at least [forty-eight] hours, giving the time, date, location and, to the extent known, the agenda of any regular, special or rescheduled meeting." However, where the governing body provides annual notice of its meetings, the additional forty-eight-hour notice of a regularly scheduled meeting is not required. Ibid.; see also Witt v. Gloucester Cnty. Bd. of Chosen Freeholders, 94 N.J. 422, 433 (1983).

Plaintiff argues the Board's November 15 and 29, 2022 meeting agendas were insufficient or lacked sufficient specificity to inform the public of the

matters to be discussed. However, the Board published notice of its 2022 annual meetings in two newspapers. The notice included the November 15 and November 29, 2022 meetings. Because the Board provided annual notice of its 2022 meeting dates, it did not have to publish agendas for either of these meetings. Ibid.; see also Crifasi v. Governing Body of Oakland, 156 N.J. Super. 182, 186 (App. Div. 1978) ("[T]here is no requirement in the [OPMA] that an agenda need be published prior to a regularly scheduled meeting.").

Importantly, it is undisputed plaintiff attended both meetings. It is evident plaintiff had ample notice of these meetings and the issues to be addressed, as plaintiff attended with its planning expert and a court reporter. Additionally, members of the public offered comments at these meetings, further evidencing the public's awareness of the issues to be discussed. Thus, we are satisfied the judge properly dismissed this count.

In count one, plaintiff alleges the Township Committee lacked the authority to conduct virtual meetings under the OPMA. Therefore, plaintiff argues the judge erred in granting summary judgment dismissal of this count.

The Township Committee's October 20 and December 8, 2022 meetings were held virtually through a secure web conferencing service. Members of the

public could attend these meetings via a video link or by telephone. The OPMA defines "[m]eeting" as

> any gathering whether corporeal or by means of communication equipment, which is attended by, or open to, all of the members of a public body, held with the intent, on the part of the members of the body present, to discuss or act as a unit upon the specific public business of that body.
>
> [N.J.S.A. 10:4-8(b).]

We consider the plain language of a statute to interpret its meaning and accord statutory language its ordinary meaning to effectuate its intent. McGovern, 211 N.J. at 108. The plain language of N.J.S.A. 10:4-8(b) permits meetings "by means of communication equipment." Plaintiff does not dispute that the secure web conferencing service constitutes a "means of communication equipment." N.J.S.A. 10:4-8(b). The OPMA expressly permits such a meeting format. Therefore, the Township Committee's meetings held through a web platform did not violate the statute. Consequently, we are satisfied the judge properly granted summary judgment dismissal of that count.

We next address plaintiff's argument that the judge erred in denying its motion for reconsideration and denying its request to extend discovery. Plaintiff sought to expand discovery to explore a Township Committee member's alleged conflict of interest, to introduce a report authored by its expert planner, and to

44

obtain discovery related to the Township Committee's transmittal of its 2022 annual meeting notice. We disagree.

In rejecting the motion for reconsideration, the judge stated he was "satisfied that [his] written decision [on summary judgment] sufficiently addressed all the issues in the [c]ourt's view" and did not "believe reconsideration [wa]s in the interest of justice based on what [he] heard." Regarding the extension of discovery on the purported conflict of interest, the judge explained the issue was "a legal inquiry that should be determined by the [c]ourt without the need for depositions." The judge found the deposition of a particular Township Committee member would be "nothing more . . . than a fishing expedition." The judge further found plaintiff had an opportunity to submit the professional planner's expert report during the original discovery period but failed to do so. Additionally, the judge stated he would "hear testimony if necessary" on the issue of the Township Committee's 2022 annual notice.

We review a trial judge's decision on a motion for reconsideration for abuse of discretion. Branch, 244 N.J. at 582. "When examining a trial court's exercise of discretionary authority, we reverse only when the exercise of discretion was 'manifestly unjust' under the circumstances." Newark Morning

Ledger Co. v. N.J. Sports & Exposition Auth., 423 N.J. Super. 140, 174 (App. Div. 2011) (quoting Union Cnty. Improvement Auth. v. Artaki, LLC, 392 N.J. Super. 141, 149 (App. Div. 2007)).

Reconsideration requires a party demonstrate either the court "expressed its decision based upon a palpably incorrect or irrational basis" or the court "did not consider, or failed to appreciate the significance of the probative, competent evidence." Triffin v. SHS Group, LLC, 466 N.J. Super. 460, 466 (App. Div. 2021) (quoting Cummings v. Bahr, 295 N.J. Super. 374, 387 (App. Div. 1996)). "A litigant should not seek reconsideration merely because of dissatisfaction with a decision of the [c]ourt." Capital Finance Co. of Delaware Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008) (alteration in original) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

Before this court, plaintiff repeats the same arguments in support of its motion for reconsideration. However, plaintiff fails to demonstrate why the judge rendered an incorrect decision. Nor does plaintiff offer any new information not previously available or any case law warranting reconsideration. Thus, the judge did not abuse his discretion in denying reconsideration.

We also reject plaintiff's arguments regarding the judge's denial of its motion to expand discovery. "An appellate court applies 'an abuse of discretion

standard to decisions made by [the] trial courts relating to matters of discovery.'" C.A. ex. rel. Applegrad v. Bentolila, 219 N.J. 449, 459 (2014) (alteration in original) (quoting Pomerantz Paper Corp. v. New Comty. Corp., 207 N.J. 344, 371 (2011)). We "generally defer to a trial court's disposition of discovery matters unless the court has abused its discretion or its determination is based on a mistaken understanding of the applicable law." Pomerantz, 207 N.J. at 371 (quoting Rivers v. LSC P'ship, 378 N.J. Super. 68, 80 (App. Div. 2005)).

Regarding its argument to expand the record to depose the Township Committee member regarding an alleged conflict of interest, plaintiff only raised the issue after filing motions for summary judgment and after the scheduling of a trial date. Plaintiff fails to explain why it was unable to depose the committee member earlier or why that individual's deposition was essential to the disposition of the case. We are satisfied the judge did not abuse his discretion in denying the motion to extend discovery.

Regarding plaintiff's motion to expand discovery to submit an expert planning report and additional discovery regarding the Township Committee's 2022 annual notice, plaintiff fails to brief these issues on appeal. Thus, the issues are waived. See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) ("An issue not briefed on appeal is deemed waived.")

We next address plaintiff's argument that the judge erred in dismissing the remaining counts of its amended complaint following a bench trial. We disagree.

On May 21, 2024, the judge held a trial on the remaining counts of plaintiff's amended complaint based on the documentary record. In a July 9, 2024 final judgment and accompanying written decision, the judge dismissed the remaining counts of plaintiff's amended complaint with prejudice.

The judge's written decision grouped plaintiff's remaining claims as follows: alleged conflicts of interest of a committee member (counts two and three); challenge to the Ordinance's substance (counts fourteen and fifteen); challenge to the consistency review conducted by the Board and considered by the Township Committee (counts nine, ten, eleven, and thirteen); and challenge to the procedures for conducting the meetings (counts seven and twelve).

In rejecting plaintiff's arguments alleging a committee member's conflict of interest, the judge concluded plaintiff failed to show any "actionable conflict." The judge found "[t]he purported conflicts alleged by . . . [p]laintiff [we]re too speculative to constitute a disqualifying interest and required speculative findings as to issues affecting non-parties" and "[t]he purported interests cannot be quantified without rash speculation."

The judge rejected plaintiff's argument that the Township Committee's four-minute time limit for public comment at its December 8, 2022, meeting was arbitrary, capricious, or unreasonable and violated the OPMA. The judge concluded the time limit "did not regulate the content of the comments" and "did not limit the content of the communication." The judge also found plaintiff submitted written comments before the December 8, 2022 meeting and plaintiff's professional planner was given four minutes to offer his thoughts at the meeting in addition to his written comments.

The judge explained the imposed time limit "was tailored to achieve the government's significant interest in allowing greater participation by more members of the public." Further, the judge noted the time limit was established "prior to opening the public comment portion of the meeting and was applied to all parties." The judge stated the time constraint did not violate the OPMA because case law gives a public body discretion in conducting meetings and N.J.S.A. 10:4-12(a) permits a public body to regulate public participation at its meetings.

The judge also rejected plaintiff's challenge to the Board's consistency review and the Township Committee's reliance on the recommendations

emanating from the Board's consistency review. In dismissing those claims, the judge found the Board's consistency review "satisfie[d] the MLUL."

As to the form of the Board's consistency review, the judge held the MLUL did not require "formality by the Board in its review and in reporting back to the [Township] Committee." The judge specifically found the MLUL did not require the Board to submit a written resolution reporting its consistency findings. In fact, the judge concluded the Board "exceeded" the MLUL's reporting requirements because it held two public meetings with participation from the public and formed an ad hoc committee to consider the Ordinance's consistency with the Township's master plan.

The judge also cited the email from the Board's attorney which detailed the Board's finding that the Ordinance was consistent with the Township's master plan. The judge found this email "satisfie[d] the report requirement" of the MLUL and "the form and substance of the [email] report comport[ed] with the provisions of the MLUL."

Additionally, the judge concluded the Township Committee satisfied its obligation under the MLUL to review the consistency report. The judge determined "the detailed review of the report on the record in the presence of the [Township] Committee and the comments by the voting [Township]

Committee members as to the report, satisfie[d] their obligation to review the Board's report." Moreover, the judge expressly found the Township Committee "incorporated the recommendation[s] of the Board it viewed as pertinent and addressed its reasons for declining to apply the other suggestions."

In addition, the judge found "there [wa]s nothing improper" about the Board's secretary and Board's administrator sending a summary of pertinent information to the Board to decide whether the Ordinance was consistent with the Township's master plan. The judge held "the Board was free to accept this information during their administrative review."

The judge also rejected plaintiff's claim the amended Ordinance was inconsistent with the Township's master plan. The judge found "the municipality complied with the requirements of the MLUL where it was responding to a need identified by the Board where the Board requested legislative guidance as to banquet halls as accessory uses." The judge determined "[t]he [a]mended Ordinance formalize[d] what had been . . . an ad hoc approach applied by the Board to a reoccurring issue in Lakewood given the number of schools." As the judge noted, the Township's master plan acknowledged the Township has a large number of private, parochial schools, the Board historically viewed banquet halls and catering facilities as accessory

51

uses to schools, and the amended Ordinance only applied to non-residential zones where schools are permitted uses. Thus, the judge found that "[b]y providing parking requirements for accessory banquet facilities, where there were none, the Ordinance cannot be said to be unreasonable or to distort the basic provisions of the [m]aster [p]lan" because "[t]he [O]rdinance addresse[d] an issue in zones where schools have been permitted, and where banquet facilities have been viewed as accessory uses."

In dismissing plaintiff's assertion that the amended Ordinance constituted a conditional use, the judge found the amended Ordinance "d[id] not create a conditional use" because "the [Township] Committee has legislated through the Ordinance providing that a banquet facility shall continue to be considered an accessory use to a school, the school being the principal use."

Nor did the judge deem the use of word "etc." in the amended Ordinance too vague. The judge explained the term "etc." "[wa]s defined as the areas 'not associated with the banquet hall functions' followed by a non-exhaustive list." Moreover, the judge stated, "the term 'etc.' [wa]s regularly used in regulations to emphasize that the examples provided [we]re a non-exhaustive list, which was the case here."

Plaintiff also argues the amended Ordinance is arbitrary, capricious, unreasonable, and not substantially consistent with the Township's master plan. Based on these arguments, plaintiff contends the judge erred in granting final judgment in favor of defendants and dismissing the amended complaint. We disagree.

Appellate courts apply a deferential standard in reviewing factual findings by a judge. Balducci v. Cige, 240 N.J. 574, 594 (2020). In an appeal from a bench trial, "we give deference to the trial court that . . . sifted the competing evidence, and made reasoned conclusions." Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015). "Reviewing appellate courts should 'not disturb the factual findings and legal conclusions of the trial judge' unless convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Ibid. (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (alteration in original) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

"[W]hen reviewing the decision of a trial court that has reviewed municipal action, we are bound by the same standards as was the trial court." Fallone Props., LLC v. Bethlehem Twp. Plan. Bd., 369 N.J. Super. 552, 562 (App. Div. 2004). "As a general principle, a municipal ordinance is afforded a presumption of validity, and the action of a board will not be overturned unless it is found to be arbitrary and capricious or unreasonable, with the burden of proof placed on the plaintiff challenging the action." Grabowsky v. Twp. of Montclair, 221 N.J. 536, 551 (2015) (citing Price v. Himeji, LLC, 214 N.J. 260, 284 (2013)). "An ordinance must be 'liberally construed' in favor of its validity." 388 Route 22 Readington Realty Holdings, LLC v. Twp. of Readington, 221 N.J. 318, 339-40 (2015) (quoting Rumson Estates, Inc. v. Mayor & Council of Fair Haven, 177 N.J. 338, 351 (2003)). "Our charge is to pass not on the wisdom of a municipal ordinance, but only on whether it complies with the Constitution and the MLUL." Id. at 340.

"Courts must also pay deference to the decision-making of municipal bodies, recognizing that they possess 'peculiar knowledge of local conditions [and] must be allowed wide latitude in the exercise of delegated discretion.'" Ibid. (alteration in original) (quoting Kramer v. Bd. of Adjustment, Sea Girt, 45 N.J. 268, 296 (1965)). "A municipal land-use determination should not be set

aside unless the public body has engaged in 'a clear abuse of discretion.'"  Ibid.

(quoting Kramer, 45 N.J. at 296-97).  "If there is 'substantial evidence to support'

the municipal decision, a court should not interfere by substituting its

judgment." Ibid. (quoting Kramer, 45 N.J. at 296).  "[T]he fundamental question

in all zoning cases 'is whether the requirements of the ordinance are reasonable

under the circumstances.'"  Pheasant Bridge Corp. v. Twp. of Warren, 169 N.J.

282, 290 (2001) (quoting Vickers v. Twp. Comm. of Gloucester Twp., 37 N.J.

232, 245 (1962)).

Under the MLUL:

> The governing body may adopt or amend a zoning
> ordinance relating to the nature and extent of the uses
> of land and of buildings and structures thereon. . . .
> [A]ll of the provisions of such zoning ordinance or any
> amendment or revision thereto shall either be
> substantially consistent with the land use plan element
> and the housing plan element of the master plan or
> designed to effectuate such plan elements.
>
> [N.J.S.A. 40:55D-62(a).]

"[T]he MLUL gives the master plan a central role in a municipality's decisions

regarding the use and development of the land within its jurisdiction."

Willoughby v. Wolfson Grp., Inc., 332 N.J. Super. 223, 229 (App. Div. 2000).

"Nonetheless, the MLUL does not mandate absolute consistency between a

zoning ordinance and a master plan."  Myers v. Ocean City Zoning Bd. of

55

Adjustment, 439 N.J. Super. 96, 104 (App. Div. 2015). "[T]he concept of 'substantially consistent' permits some inconsistency, provided it does not substantially or materially undermine or distort the basic provisions and objectives of the [m]aster [p]lan." Ibid. (first alteration in original) (quoting Manalapan Realty, 140 N.J. at 384). A determination by a planning board that an ordinance is substantially consistent with a master plan "is entitled to deference and great weight." Manalapan Realty, 140 N.J. at 383.

Here, the judge concluded the amended Ordinance was not arbitrary, capricious, or unreasonable or inconsistent with the Township's master plan. The judge's findings were amply supported by credible evidence in the record.

One of the Township's master plan's goals is to "[p]rovide sufficient educational, recreational, and community facilities to meet future needs." The Township's land use strategies in the master plan include, among other things, an intent to "[c]reate a balanced and compatible arrangement of residential, business and industrial land uses and minimize land use conflicts" and to "[a]mend the zoning ordinance, when necessary, to improve and enhance the intent and purpose of each zone district and the consistency and clarity of the permitted uses and development standards."

The land use element of the Township's master plans describes the "purpose" of the M-1 industrial zone. The purpose of that zone

> is to facilitate the development of uses of an industrial nature, such as: bulk storage, manufacturing or assembly facilities; warehouses; public utility uses; airports; office buildings; hotels and motels; health and human services; restaurants; laboratories; uses affiliated with the operations of the United States Postal Service; and, similar uses. In addition, the M-1 ([i]ndustrial) [z]one provides for the development of quasi-public and private educational facilities.

The Township's master plan also notes "[t]he Township is home to a large number of private, parochial primary and secondary schools" and that "[o]ne of the critical planning issues for Lakewood is the amount of land in suitable areas for an increasing number of private school facilities." The master plan further states "[p]rivate schools serving the needs of Lakewood families are the most prevalent type of educational facility in the Township, and operate with a wide range of enrollment throughout the Township."

Here, the Ordinance allows banquet halls as permitted accessory uses to schools in all non-residential zones where schools are permitted uses provided the parking requirements are satisfied. The Board explained it historically viewed banquet halls as accessory to schools and previously approved applications allowing banquet halls attached to schools. Thus, the Board

recommended the Township "codify[] that banquet halls [we]re an accessory use to schools" because the Board "for many years, viewed banquet halls as an accessory to schools" without a formal ordinance.

On this record, we are satisfied the Ordinance is not arbitrary, capricious, or unreasonable. The Ordinance allows banquet halls as accessory uses to schools in non-residential zones where schools are already permitted uses. See Lakewood, N.J., Code § 18-906(I). The Ordinance provided necessary guidance for catering facilities and banquet halls as accessory uses to schools where there was no prior guidance.

Contrary to plaintiff's argument that the Ordinance would cause increased traffic, the Ordinance sets forth specific parking requirements aimed to reduce high-traffic conditions. By providing specific parking ratios, the Ordinance ensures proper parking is available for a banquet hall operating as an accessory use to a school and precludes on-street parking that might generate traffic problems. The Board discussed the parking situation in detail and recommended the Township Committee require additional parking to address increased traffic volumes. The Ordinance simply codified the historic view within the municipality that banquet halls and catering facilities were an appropriate accessory use to a school in zones where schools were permitted uses.

We agree with the judge's finding that the Ordinance was substantially consistent with the master plan's land use element. The Township's master plan recognizes a purpose of the M-1 industrial zone is to "provide[] for the development of quasi-public and private educational facilities." Consistent with this purpose, the Ordinance allows banquet halls affiliated with private schools to operate as accessory uses to those schools. Moreover, the M-1 industrial zone allows hotels, restaurants, and health services which, like schools, are not traditional industrial uses. There is no evidence the Ordinance would "substantially or materially undermine or distort" the purpose of the M-1 industrial zone. Manalapan Realty, 140 N.J. at 384. Thus, plaintiff fails to overcome the deference accorded to the Board's consistency determination.

We next address plaintiff's argument that neither the Board nor the Township Committee reviewed the Ordinance for consistency with the Township's master plan. As a result, plaintiff contends the Ordinance is arbitrary, capricious, and unreasonable.

N.J.S.A. 40:55D-64 provides: "Prior to the hearing on adoption of a zoning ordinance, or any amendments thereto, the governing body shall refer any such proposed ordinance or amendment thereto to the planning board pursuant to [N.J.S.A. 40:55D-26]." N.J.S.A. 40:55D-26(a) states:

A-4035-23

Prior to the adoption of a development regulation, revision, or amendment thereto, the planning board shall make and transmit to the governing body, within [thirty-five] days after referral, a report including identification of any provisions in the proposed development regulation, revision or amendment which are inconsistent with the master plan and recommendations concerning these inconsistencies and any other matters as the board deems appropriate. The governing body, when considering the adoption of a development regulation, revision or amendment thereto, shall review the report of the planning board and may disapprove or change any recommendation by a vote of a majority of its full authorized membership and shall record in its minutes the reasons for not following such recommendation. Failure of the planning board to transmit its report within the [thirty-five]-day period provided herein shall relieve the governing body from the requirements of this subsection in regard to the proposed development regulation, revision or amendment thereto referred to the planning board.

"Any ordinance regulating land use that is not adopted in accordance with [N.J.S.A. 40:55D-62(a)] is invalid." Nouhan v. Bd. of Adjustment of Clifton, 392 N.J. Super. 283, 291 (App. Div. 2007).

Here, the judge found the Board's consistency review of the Ordinance comported with the MLUL. The Township Committee introduced the Ordinance at its October 20, 2022 meeting and then referred the Ordinance to the Board for review. The Board held two consistency review meetings on November 15, 2022, and November 29, 2022. At the beginning of the November 15, 2022

60

meeting, the Board's attorney explained the Board had to determine whether the Ordinance was "consistent or inconsistent with the objectives of the [m]aster [p]lan." As part of the consistency review, the Board considered public comments at the November 15, 2022, meeting, including plaintiff's objections through its attorney and comments from plaintiff's professional planner. Additionally, the Board formed an ad hoc committee to meet with the Board's planner and review the Ordinance's consistency with the Township's master plan.

The Board met again on November 29, 2022 to continue its consistency review. At that meeting, the Board's administrator reported the ad hoc committee met and discussed whether the Ordinance should apply to residential zones and whether the parking requirements would be sufficient. The Board again considered public comments, including those from plaintiff's attorney and plaintiff's professional planner. Following the comments, the Board voted to approve a motion stating, "the Board agree[d] that an ordinance regulating banquet halls as an accessory use to schools [wa]s consistent with the [m]aster [p]lan" and recommended the Township Committee include more parking requirements. The Board's attorney then sent a December 1, 2022 email to the Township's attorney, reporting the Board's findings and expressing that the

"[B]oard believe[d] that th[e] [O]rdinance [wa]s consistent with the master plan." Additionally, the Board's attorney advised that the Board urged the Township Committee to require more parking as part of the Ordinance.

Having reviewed the record, we are satisfied the Board's consistency review complied with the MLUL. The Board held two meetings to consider whether the Ordinance was consistent with the Township's master plan. The Board's attorney confirmed the purpose of the Board's review of the Ordinance and advised the Board to report its findings to the Township Committee. In an email to the Township's attorney, the Board's attorney confirmed the Board's recommendation, finding the Ordinance consistent with the Township's master plan. The Board attorney's email included the Board's recommendation to increase the Ordinance's parking requirements.

The MLUL does not require any particular formality regarding the format of a local board's consistency review report. See N.J.S.A. 40:55D-26(a). The email from the Board's attorney to the Township's attorney comported with the MLUL.

Contrary to plaintiff's arguments, the Board considered the comments and objections presented by plaintiff's attorney and plaintiff's professional planner at its consistency review meetings. Plaintiff's planning expert opined the

Ordinance was inconsistent with the Township master plan. However, the Board was not bound by the opinions of plaintiff's planning expert. See Allen v. Hopewell Twp. Zoning Bd. of Adjustment, 227 N.J. Super. 574, 581 (App. Div. 1988) (noting the planning board was free "to accept or reject" the opinions of an expert planner presented by the plaintiffs). We are satisfied there is sufficient evidence supporting the Board's consistency review in accordance with N.J.S.A. 40:55D-26(a).

Plaintiff further argues the email from the Board's attorney failed to adequately convey the concerns related to the Ordinance addressed during the Board's meetings. We disagree.

The Board's primary concerns in its consistency review meetings focused on the Ordinance's impact on residential zones and the parking requirements. These concerns were conveyed to the Township Committee in the Board attorney's email. This email included the Board's consideration of "possible different alternatives to define the criteria from which parking ratios could be calculated," including "a ratio that would be based upon the gross square footage of the building." Thus, the Board's attorney adequately conveyed the Board's concerns about the Ordinance.

A-4035-23

We also reject plaintiff's argument that the Board's action was arbitrary, capricious, and unreasonable because the Board never discussed "grandfathering" existing schools with banquet halls. Although the Board may not have used the term "grandfathering," the Board noted its longstanding view that banquet halls were accessory uses to schools and its historical approval of applications for banquet halls in schools. Further, the Board reviewed existing schools with banquet halls to determine an appropriate parking ratio as part of its recommendation to the Township Committee.

In support of its claim that the Ordinance is arbitrary, capricious, and unreasonable, plaintiff also argues the Board failed to request a report from the Board's planner. However, the Board's planner served as a member of the ad hoc committee formed to address the Ordinance's consistency with the Township's master plan.

We are satisfied the Board's recommendation regarding the Ordinance's consistency with the Township's master plan was not arbitrary, capricious, or unreasonable. Thus, the judge properly entered judgment for defendants on this issue.

Plaintiff also argues the Township Committee's limiting of public comment to four-minutes at the December 8, 2022 meeting was arbitrary,

capricious, and unreasonable and prejudiced plaintiff's right to be heard. We disagree.

The Township Committee's imposition of a four-minute time limit for public comment at its December 8, 2022 meeting applied to everyone. During his time, plaintiff's attorney voiced plaintiff's objection to the amended Ordinance. Plaintiff's planning expert also used his four minutes to voice objections to the amended Ordinance. Further, the Township Committee included plaintiff's December 7, 2022 letter to the Township Committee objecting to the amended Ordinance as part of the record at the December 8 meeting.

The OPMA provides that "all meetings of public bodies shall be open to the public at all times" absent certain exceptions. N.J.S.A. 10:4-12(a). It also provides that "[n]othing in [the OPMA] shall be construed to limit the discretion of a public body to permit, prohibit, or regulate the active participation of the public at any meeting." Ibid. Regarding compliance with the OPMA, "public bodies are given discretion in how to conduct their meetings." Kean Fed'n of Tchrs. v. Morell, 233 N.J. 566, 571 (2018) (citing N.J.S.A. 10:4-12(a)). N.J.S.A. 40:49-2(b) provides that whenever a meeting "for the further consideration" of

an ordinance is held, "all persons interested shall be given an opportunity to be heard concerning the ordinance."

We discern no error in the Township Committee's procedure for the presentation of public comment at its December 8, 2022 meeting. The four-minute time constraint on public comment applied to all members of the public, not just to plaintiff's attorney and plaintiff's planning expert. Further, the time limit did not regulate the content of public comments. Plaintiff had ample opportunity to present its objections to the amended Ordinance at the Township Committee's December 8, 2022 meeting prior to the Ordinance's adoption.

Additionally, plaintiff asserts a Township Committee member had a disqualifying conflict of interest precluding his voting on the Ordinance under N.J.S.A. 40A:9-22.5(d). Plaintiff argues the Township Committee member had a conflict of interest because his children attended a school with a banquet hall and the Ordinance would thus benefit that member. Plaintiff further claims the Township Committee member's mother served as an administrator at schools in the municipality and those schools would benefit from adoption of the Ordinance. Because it claims these immediate familial relations disqualified the Township Committee member's participation in meetings concerning the

Ordinance, plaintiff argues the Township Committee lacked a majority of the governing body to vote on the amended Ordinance. Again, we disagree.

"Under our common law, '[a] public official is disqualified from participating in judicial or quasi-judicial proceedings in which the official has a conflicting interest that may interfere with the impartial performance of his duties as a member of the public body.'" Grabowsky, 221 N.J. at 551 (alteration in original) (quoting Wyzykowski v. Rizas, 132 N.J. 509, 523 (1993)). The Local Government Ethics Law (LGEL), N.J.S.A. 40A:9-22.1 to -22.25, is designed "to make ethical standards in state and local government 'clear, consistent, uniform in their application, and enforceable on a statewide basis.'" Id. at 552 (quoting Wyzykowski, 132 N.J. at 531).

Under the LGEL:

> No local government officer or employee shall act in his official capacity in any matter where he, a member of his immediate family, or a business organization in which he has an interest, has a direct or indirect financial or personal involvement that might reasonably be expected to impair his objectivity or independence of judgment.
>
> [N.J.S.A. 40A:9-22.5(d).]

A-4035-23

The LGEL defines "[m]ember of immediate family" as "the spouse or dependent child of a local government officer or employee residing in the same household." N.J.S.A. 40A:9-22.3(i).

Wyzykowski set forth the circumstances mandating disqualification of a public official, which include:

> (1) "Direct pecuniary interests," when an official votes on a matter benefitting the official's own property or affording a direct financial gain; (2) "Indirect pecuniary interests," when an official votes on a matter that financially benefits one closely tied to the official, such as an employer, or family member; (3) "Direct personal interest," when an official votes on a matter that benefits a blood relative or close friend in a non-financial way, but in a matter of great importance . . . and (4) "Indirect [p]ersonal [i]nterest," when an official votes on a matter in which an individual's judgment may be affected because of membership in some organization and a desire to help that organization further its policies.
>
> [132 N.J. at 525-26.]

"[W]hether a particular interest is sufficient to disqualify is necessarily a factual one and depends upon the circumstances of the particular case." Van Itallie v. Borough of Franklin Lakes, 28 N.J. 258, 268 (1958) (citing Aldom v. Borough of Roseland, 42 N.J. Super. 495, 503 (App. Div. 1956)). "To determine whether there is a disqualifying interest, a court need not ascertain whether a public official has acted dishonestly or has sought to further a personal or

financial interest; the decisive factor is 'whether there is a potential for conflict.'" Grabowsky, 221 N.J. at 554 (quoting Wyzykowski, 132 N.J. at 524). "A conflicting interest arises when the public official has an interest not shared in common with the other members of the public." Wyzykowski, 132 N.J. at 524 (citing Griggs v. Borough of Princeton, 33 N.J. 207, 220-21 (1960)). "Another way of analyzing the issue is to understand that '[t]here cannot be a conflict of interest where there do not exist, realistically, contradictory desires tugging the official in opposite directions.'" Ibid. (alteration in original) (quoting LaRue, 68 N.J. Super. at 448). "The question will always be whether the circumstances could reasonably be interpreted to show that they had the likely capacity to tempt the official to depart from his sworn public duty." Van Itallie, 28 N.J. at 268.

Nonetheless, "[t]he determinations of municipal officials should not be approached with a general feeling of suspicion." Id. at 269. "The ethics rules must be applied with caution, as '[l]ocal governments would be seriously handicapped if every possible interest, no matter how remote and speculative, would serve as a disqualification of an official.'" Grabowsky, 221 N.J. at 554 (alteration in original) (quoting Wyzykowski, 132 N.J. at 523).

We are satisfied the Township Committee member at issue here did not have a disqualifying interest precluding his voting on the Ordinance. The judge

expressly rejected plaintiff's conflict of interest allegations as "remote and speculative." Wyzykowski, 132 N.J. at 523. Thus, the Township Committee had a required majority of members to vote on the Ordinance at its December 8, 2022 meeting and the judge did not err dismissing this claim.

Plaintiff also argues the amended Ordinance creates a conditional use in violation of N.J.S.A. 40:55D-67. According to plaintiff, the Ordinance's parking requirements effectively created a conditional use in non-residential zones and failed to establish definite standards for the conditional use under the statute.

A conditional use is defined as:

> [A] use permitted in a particular zoning district only upon a showing that such use in a specified location will comply with the conditions and standards for the location or operation of such use as contained in the zoning ordinance, and upon the issuance of an authorization therefore by the planning board.
>
> [N.J.S.A. 40:55D-3.]

"A conditional use is a use permitted in a particular zone, but only upon certain conditions." Omnipoint Commc'n, Inc. v. Bd. of Adjustment of Bedminster, 337 N.J. Super. 398, 413 (App. Div. 2001). "That is, a conditional use, as opposed to a prohibited use, is based on the premise that the use is generally suitable to a particular zoning district, but not at every location in the district." Ibid. (citing Coventry Square v. Westwood Zoning Bd. of Adjustment,

70

138 N.J. 285, 294 (1994)). "Consequently, a conditional use ordinarily will require compliance with special enumerated standards with respect to traffic patterns, street access, parking and such, to [en]sure that it can be compatibly integrated with the district as a whole." Ibid. (citing Coventry Square, 138 N.J. at 294).

N.J.S.A. 40:55D-67(a) provides: "A zoning ordinance may provide for conditional uses to be granted by the planning board according to definite specifications and standards which shall be clearly set forth with sufficient certainty and definiteness to enable the developer to know their limit and extent." If a conditional use clause in an ordinance does not include these specific standards, it may be "void for vagueness." Meszaros v. Plan. Bd. of S. Amboy, 371 N.J. Super. 134, 144 (App. Div. 2004).

We are satisfied the Ordinance did not create a conditional use. The Ordinance is clear that "[i]n all non-residential zones where schools are permitted uses . . . catering facilities and banquet halls shall continue to be allowed as accessory uses in the school buildings" provided that the parking requirements are met. Lakewood, N.J., Code § 18-906(I)(1). Under the Ordinance, the schools are the principal permitted use, while the catering facilities and banquet halls are accessory uses serving events associated with

private schools throughout the municipality. Catering facilities and banquet halls serve as "customary" and "incidental" uses to the principal permitted use of the school and, therefore, are accessory uses to the schools rather than conditional uses. Mountain Hill, L.L.C. v. Zoning Bd. of Adjustment of Middletown, 403 N.J. Super. 210, 243 (App. Div. 2008) (citing State v. P.T. & L. Const. Co., Inc., 77 N.J. 20, 26-27 (1978)).

We also reject plaintiff's argument related to the use of the word "etc." in the Ordinance as vague rendering it arbitrary, capricious, and unreasonable. As to parking, the Ordinance states:

> For the section of the school utilized for catering and banquet functions (to be known as the [b]anquet [h]all space, but not including bathrooms, food prep rooms, and facilities not associated with the [b]anquet [h]all function such as guest preparation rooms etc.) 1.0 parking space shall be required for every 50 square feet thereof.
>
> [Lakewood, N.J., Code § 18-906(I)(1)(a).]

The judge noted the term "etc." followed the phrase "facilities not associated with the [b]anquet [h]all function." He explained the Ordinance specifically listed examples and concluded the word "etc." "emphasize[d] that the examples provided [we]re a non-exhaustive list." We agree with the judge

that the term "etc." did not render the Ordinance arbitrary, capricious, or unreasonable.

For the foregoing reasons, we affirm the orders challenged on appeal.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division